Good morning. United States Court of Appeals for the Ninth Circuit is now in session. Good morning. We have one case on the docket today. And before we take that up, I want to thank Judge Parker for helping us out this week. We very much appreciate it. Judge Parker's with Second Circuit Court of Appeals in New York. And so thank you very much. He's already done a tremendous amount of work preparing for the calendar this week. We really appreciate it. The case we're hearing this morning is Carmona v. Domino's Pizza. Counsel, you may begin. Good morning, Your Honors. I may have pleased the court, Norman Leon for the appellant, Domino's Pizza. Your Honors, I'd like to reserve two minutes of my time for rebuttal if I could. Please watch your clock. Yes, Your Honor. Your Honors, there are three separate reasons why the district court's denial of Domino's motion to compel arbitration was an error. And under Rittman, each one of them standing alone compels reversal. The first point I'd like to address is the district court's conclusion that this class of plaintiffs engaged in interstate commerce or that the goods that they delivered were still part of the stream of commerce. And needless to say, to invoke the Section 1 exemption, it's not enough to be a transportation worker. You need to be a transportation worker engaged in interstate commerce. In Rittman, the Amazon workers satisfied this requirement even though they never crossed state lines because they took product that traveled interstate and delivered it for the last mile of its interstate journey. Now importantly, in doing so, they completed what was always a single unified transaction. Product that was interstate journey from somewhere to California. While that product stopped in California, it did so only to change the container in which it was delivered. The single transaction at issue was always the same. The local Amazon drivers just completed that single transaction by carrying the exact same product that had traveled interstate to the conclusion of what was always a single interstate journey. So let me let me ask you because it seems to me that Rittman might cut the other way. Please help me with this. Domino's purchases products, some products interstate that are transported to the supply center, correct? The only product that might be interstate in this case, your honor, is mushrooms. Okay, there's probably others, but at least the record establishes mushrooms. Those mushrooms are then resorted, repackaged, and sent on to Domino's franchisees, who I guess are the ultimate consumer of them, and transported in the last leg of the journey by the claimants. Why isn't that written? Because it's not a single transaction, your honor. Does Rittman turn on the single? See, my problem is that these are all in the possession or control of Domino's from purchase until delivery to the franchisee. And so what isn't doesn't that really make it like a single transaction? I think Rittman explains to us why it's not both in terms of what it says and the cases that it discusses, your honor. And there's two, one in particular that I'd like to address. And that's the Supreme Court case that Rittman discussed. And in that case, the Supreme Court addressed live poultry that had come to a slaughterhouse and then it was processed and resold to local retailers. The court held that the stream of commerce there ended because it was just as there were two separate transactions. Let's talk about Schechter because terrible law, but if it's still true, but Schechter, the product was transformed from a live chicken to a dead chick at the slaughterhouse. Here, what's the transformation of the mushrooms? There's no transformation of the mushrooms, your honor, but I don't know that the transformation of the product is essential to what Schechter held. Well, while we're still on Schechter, you made the point that in Schechter, the product was resold right after it had been transformed. Here, there's no resale. Here it goes straight from the out-of-state shipment to the Domino's owned, I guess, facility. And there's no resale. It's just been transferred on to the Domino's franchisees. No, that's not correct, your honor. If in this case, the Domino's franchisees had ordered product from Domino's in Michigan and Domino's had arranged to have that product shipped interstate and these plaintiffs picked up that specific product and delivered it to the stores, that would be written. But that's not this case. In this case, the supermarket. At that point, a separate transaction, a transaction in which these plaintiffs took no part took place. That transaction happened only when Domino's stores in California picked up the phone in their stores in California, placed an order with the supply center in California, and these plaintiffs then picked up that product from the supply center in California and took it to the stores in California. That transaction, the one in which the plaintiffs took part, was entirely interstate, intrastate rather. And we know that that's different, your honor, because of what Rittman said. In discussing what the delivery drivers, the Amflex drivers in Rittman did, this court made note of the fact that the packages are not held, and I'm sorry, this is from page 916 of the opinion. The packages are not held at warehouses for later sales to local retailers. They are in this case, and those facts are undisputed. These products do not reach the supply centers in California because of orders that the stores place. They reach the supply center because of Domino's, just like a grocery store, orders that Domino's places in anticipation of what its customers might need. If that was interstate commerce, then every boy or girl that delivered groceries from a supermarket would be engaged in interstate commerce because those goods inevitably come from out of state. This is a little different, and this is why it becomes a little bit more difficult. The people that are purchasing the product at the end are Domino's franchisees. Correct, your honor. And it's Domino's that set up this business model to bring in the stuff from out of state, to have it stop at the supply center where they can apportion it, and then use its own employees, not a kid going to the grocery store, but its own employees to deliver the product to the eventual franchisee. So isn't Domino's involved at every step of this transaction? Why doesn't it make it a unified transaction? And again, I would go back to what Schecter said about this, your honor, and Rittman's discussion. There is the transformation of the product. In other words, if you made the pizzas at the supply center, and then ship them on to the franchisees, that would be a good Schecter analogy, but that's not what's happening here. But there's no part of the Schecter analysis that depends on the transformation of the product. The Schecter analysis, the Yellow Cab analysis, the Rittman analysis, all depend upon whether or not there was a single transaction. And this is what the court said about it. Once the poultry reached the slaughterhouses, and I apologize, this is again from page 916, any further commerce involving the poultry required new or subsequent transactions, all of which took place within the state of the slaughterhouse. Those transactions thus marked the dividing line between interstate and intrastate commerce. Domino's obviously hopes that all of the product that it ships to its supply center is resold, just like a grocery store. They hope that all of the product ends up in the hands of the consumers. In this case, the Domino's franchisees. But if it doesn't happen, that product stays there. For it to happen, there needs to be a new, a subsequent transaction, just as in the A.L. Schecter case. Let me ask my question slightly differently, and then I'll give up on it. The eventual, the transaction here is to somebody who's involved in this entire Domino's franchising system. In other words, you're not selling to the public at large. The franchisee is required to buy its products from Domino's. That's not correct, your honor. The franchisees can say to you, to heck with your mushrooms, we'll buy them from somewhere else? The franchisees are entitled to set up their own commissaries and produce their own product, correct? Where's that in this record? It's not in the record. I'm just answering your honor's question. Okay, fair, because I couldn't find that in the record. But you set up a business model under which you buy products, put them at your supply center, and then send them on to your franchisees, as opposed to selling to the public at large. For example, in Schecter, selling to grocery stores at large. Does that make this a single stream of commerce? What I'm focusing on is that Domino's fingerprints are on every step of the way, as opposed to Schecter, where a third party comes in to buy the products. I'm not aware of any case, your honor, that hinges the commerce requirement on whether or not one party is involved in every step of the transaction. Every case that I've taken a look at on this issue, and that includes Rittman and Yellow Cab and Schecter, all make the commerce requirement dependent upon whether or not you're dealing with a single interstate transaction. That's really the holding of Rittman. The product started interstate, and it was always destined as part of a single transaction to end up at the consumer's locations in California. That's not this case. Would it make a difference in your view? Why isn't it this case? I mean, the raw products are not going to stay with Domino's at its warehouse. If they're not ordered, they will, your honor. Suppose all that happened here was that the shipments were broken down. You had tractor-trailers bringing a large volume of goods, and they were simply broken down into smaller packages for smaller trucks to deliver. That would be a single stream of commerce, wouldn't it? I think it depends upon the nature of the transaction, your honor. If the order started out as a predetermined order to end up at a location in California through an interstate transaction, I think the answer to your question would be yes. But again, that's not this case. We have two separate transactions. We have the transaction whereby Domino's orders product to the supply center in anticipation of a subsequent transaction. Then we have the subsequent transaction, which is entirely interstate, where the franchisees in California order product from the supply center in California and have it delivered. If the mere fact that you were dealing with the same product was enough, every local delivery of product that started out of state would end up being an interstate transaction. That's not the way the courts have approached this. The focus of the workers' jobs needs to be on the transport of goods in interstate commerce. That has nothing to do with these workers' jobs. It's undisputed on this record that these workers never crossed state lines ever. If Domino's owned the provincial restaurants, let's assume there were no franchisees. These were owned by Domino's. Would this be an interstate commerce transaction? If Domino's owned the locations, I think that would be a stronger case, Your Honor. I know it would be stronger. That was the premise of my question. I'm not sure that I can think of a perfect analogy to that, Your Honor, other than I know the Fifth Circuit case, the Hill case dealing with furniture retailers, dealt with furniture being shipped interstate and then ending up in local retailers. It seems to me clear that it would because if you're running the entire chain, the fact that the product stops at the supply center shouldn't make these people not involved in interstate commerce. If that's right, it seems to me you must be relying on the independent nature of the franchisees. The fact that there is a separate transaction by which the franchisees order product to have that product, correct, Your Honor. I see I'm under the two minutes I reserved. Unless the court has additional questions, I prefer to reserve the balance of my time. All right, you may reserve that. Thank you, Your Honor. Mr. Desai. Good morning, Your Honor. It's Ashish Desai on behalf of the FLEs. I think that the issue here, and I think that the judges here recognize this, is really the notion of Domino's argument and what it involves. For Domino's to be correct in this argument, you have to assume that the drivers must cross state lines in order to be engaged in interstate commerce. We know there's a long line of cases, not only with Rittman, but going back to the Nieto, the Peleco cases, the Ward cases, which all say that it's not necessary to cross. That's not what they're saying. Both sides are making parades of horribles, the paperboy and you on the other hand. Domino's must itself drive it across state lines. What they're saying is that it stop at the supply center and the subsequent transaction with the franchisees is what takes it out of interstate commerce. So if we could focus on that end of the chain, it would be more helpful. And I have a question for you on that end of the chain. I think it's the opposite of the question I just sold it to local pizza parlors. Otherwise, the transaction is exactly the same. Would your clients be involved in interstate commerce? No question about it. I mean, Domino's is engaged in every step of the process. I just changed the process for you. The sale is not to local franchisees of Domino's, but to Luigi's Pizza. Domino's is a big pizza ingredient supplier. It supplies them to independent operators. There are no Domino's franchisees. At that point, wouldn't Mr. Leon's argument work? Wouldn't the chain of commerce be broken when it arrived at the supply center and you engaged in independent transactions with third parties? I don't think so. The mushroom is still a mushroom. What changed about it? A tomato is still a tomato. In the poultry cases that we were talking about earlier, you had a dead chicken that turned to a live chicken. They said, okay, that will agree with changing. But there's no changing a mushroom. There's no changing a tomato. There's no changing cheese. It is what it is. It starts out in Illinois. It starts out in Colorado. In fact, there's foreign interstate commerce here because the policy instead of having Domino's truck the merchandise to the distribution center, the merchandise came on third party carry. Covered or not. That makes no difference. Those are the exact facts of written. In fact, Amazon didn't deliver the last mile deliveries themselves. They use third party carriers. Coming into the warehouse, going to the mushroom farm in Idaho and picking the material up and picking the produce up and getting it to the distribution center on third party trucks. Again, whether they're using third party trucks or their own trucks, I think the rule says that we need two things for it to be exempt under the FAA. They have to be transportation workers, which these are truck drivers. These aren't food delivery drivers using bicycles to get from one place to the other or their personal cars. They're using big haul long trucks. The second thing is they have to be engaged in interstate commerce. What is the definition of engaged in interstate commerce? When does the stream of commerce come to an end? I take it you would agree that if all and then distributed, that wouldn't be interstate commerce. Again, if they're breaking the mushrooms down, I don't know how you break a mushroom down, but you're taking eight square foot packets and changing them to one square foot packets for retail local delivery. That's what I mean by breaking down. Sure. And those were all the cases we're talking about where they said, well, if all dominoes did was that do we have interstate commerce or not? I would still say yes, but I understand what the court is saying. It'd be a tougher case for sure. Why? Why? Why would we? What would be the theory there? The theory is, is that if it is still in the stream or flow of commerce, if it hasn't materially changed from started to where it ended, the only, at some point you have to stop the stream of commerce. In other words, it's not enough to say myopically, my drivers only drive from Modesto to Los Angeles. That is their only role, their local delivery drivers. Well, we've got a line of cases say, just being a local delivery driver is not enough. You can still be engaged in interstate commerce. We know their drivers. What we're trying to figure out is whether or not they're engaged in interstate commerce. And it seems to me your position. My father used to own a retail men's clothing store. All the products that he bought were manufactured outside of New Jersey. He sold them to people in New Jersey. Was he engaged in interstate commerce because the product? No, because that's that circuit city versus Adams right there. So it seems to me, it seems to me the origin of the product isn't enough. You agree? That's true. You also have to be a transportation worker, circuit city. I understand transportation worker is a separate issue. I'm trying to figure out why it's interstate commerce simply because the product originated in a state other than California. Is that enough in your view? It is. That's the definition of interstate commerce. My father, much to his surprise, would have been involved in interstate commerce. Like everyone else, like all the other cases we're dealing with, this pen that I got, I'm dealing with interstate commerce. It didn't come from California. It came from China. That's interstate commerce. Interstate commerce is a very, very broad concept. In Adams versus circuit city, we had a worker that worked at just one circuit city. He wasn't engaged. Counsel, excuse me, I have a question. I don't think your case depends on defining interstate commerce so broadly because we do use the language of the stream of interstate commerce. The question is, in my mind, what is enough to break that stream? And various cases have looked at various facts and answered that differently. I have maybe an easy question for you. We all know because we've seen them on the street that Domino's has its own drivers that take the pizza from the franchisee to the ultimate consumer of the pizza. Um, are those drivers part of the stream of interstate commerce? No, they're not. Because that is DoorDash. Those are the lines of cases. What they said was, is the nature of the character. Have they lost their character? And what they talked about in the DoorDash line of cases, they said, well, there is product and food going into DoorDash, but then they convert and change character. They take the hamburgers and hot dogs and convert them and repackage them into a meal. And because they have made it into a meal, something that is of a different character, then therefore the stream of commerce, the stream of international commerce, the flow of interstate commerce ends at that point. Suppose they had just taken pre-packaged frozen, the Domino delivery people had just taken pre-packaged frozen pizzas and, you know, wrapped in cellophane or what have you, and ship those out to the customers. Would that be interstate commerce or not? Well, and then all they did was at the stores, they heated up that package and then delivered it. No, they, I could call up Domino's and say, look, my kids are coming home end of the day, send me over, you know, two pre-packaged, already made pizzas, and when they get here, I'll heat them up. Are they in interstate commerce? They're in interstate commerce. They haven't done nothing to change the flow of commerce. I thought you just told me that it depended on some reconfiguration of the character of the merchandise. Right, like the slaughter, the cheese and salami and whatnot and dough and turning it into a pizza. That's right. But under your example, it already came that way. It already came pre-packaged, so all they did was warm it up. They didn't come pre-packaged to Domino's Supply Center. They made it there. That's, I think, what Judge Parker's asking you. Yeah. If Domino's transforms all these ingredients into a pizza and then delivers that frozen pizza to the franchisee, you agree that the drivers are not engaged in the stream of interstate commerce bringing that pizza to the franchisee, don't you? On that, you got me. Yes, I agree with that. But on that, you're right, because then you're more like the DoorDash. You're just like the last-mile delivery driver in DoorDash and those lines of cases. But here, we have not changed the character of an onion, of a mushroom, of an olive, of a pepperoni, of a sausage. What happens is they take- You cooked it. That's nothing. You didn't kill it. You cooked it. How does that change the character of what you have? It's still a mushroom. The fact that you cook it doesn't take it out of the stream of commerce. You haven't materially changed what the character is of the product. That is the whole definition of stream of interstate commerce. It could have said just interstate commerce, but it says you are part of the stream. What does that mean? You're part of that process. You're not the whole thing. We get that. You're not the guy who put the whole thing together. You didn't pick the mushrooms. You didn't put them on the truck. You didn't get them to the supply center. The real issue in this case is that where does the stream of interstate commerce end? Does it end at the supply center, that Domino's is saying, or does it end when the product gets to its final destination? But your argument necessarily turns on how the mushrooms are treated at the supply center. That's right. That's right. A hundred percent. Because obviously, if they'd been put in ragu sauce, and sauce had been delivered, you'd agree that the product had been transformed. If you put it in ragu sauce and create a pesto a la gente sauce, yes. You don't get to keep playing with the hypotheticals. If it's transformed into sauce, it's transformed into sauce. I don't care whether it's pesto sauce or red tomato sauce. Since your argument turns on the treatment of the mushrooms at the supply center, tell me what the record shows with respect to the treatment of the mushrooms at the supply center. Well, the record only shows that they take the mushrooms at the supply center, and at most they repackage them and then distribute it to the franchise. That's all they do. They don't say that they turn it into sauce. They don't say they turn it into pizza. They don't cook them. They don't cook them. You can't cook the mushroom there. You got to cook it somewhere else. I don't know whether you have to or not. I'm only a consumer of pizza, not a maker. But it seems to me if they cooked them, there might be an argument of some transformation. I think that's fair. Now, again, what we're talking about is the slippery slope of a line that you get when we're talking about what is it to transform a product? What is it to change the character of a product? Now, that could mean a lot of different things. But in this particular case, it's easy because you can't transform a tomato or a mushroom or an olive or a pepperoni. We know that. So those aren't the cases that we have. The facts before you have it. You can transform those. You're arguing that they didn't in this case. See, that's why I'm pushing back on you. These are all products that can be transformed. You're arguing on the particular facts of this case. They weren't transformed. That's fair. I agree. And so, you know, I just want to be sure I'm clear on your answer to one of my earlier hypotheticals. If all of this material had come to Domino's through third-party shippers, Domino's folks never crossed the state line. It's your position that it's still a stream of commerce? That's right. If you look at Nieto, Pacheco, Ward, Huayataca, all those cases in which the drivers only stayed within state lines and the argument that all of the defendants made in those cases were that they never crossed state lines. Their only job was to take product from one place and bring it to the other within this state that they were doing business in. And in every one of those cases, the court said that's not enough. That's right. And so I see that I'm running out of time. So if the court has any more questions, I'm happy to answer them. Otherwise, I yield the remainder of my time to my esteemed opposing counsel. Thank you. All right. Thank you, counsel. Mr. Leon? Thank you, your honors. There's just two quick points I wanted to make. Judge Parker asked the question, what would happen if the product crossed state lines by third-party shippers? That's this case. The evidence is undisputed that the product crossed state lines either through the vendors themselves or third-party shippers. There is nobody in this case that is employed by Domino's who is engaged in carrying goods across state lines. That evidence does not exist in this case. But you agree that's not necessary? You agree that you could have an interstate transaction in the stream of interstate commerce, even if the product crossed state lines driven by other people? The focus has to be, your honor, on whether the workers focus is on transporting goods across state lines. I understand. That's not what I asked. It doesn't decide the case simply because the product was brought into the state by third parties. You agree? I agree with that, your honor. But there is no class of workers here who is involved in transporting goods across state lines. That class just doesn't exist. The other quick point I wanted to make, we keep talking about mushrooms, your honor, and I think there's a Grice, Capriol, that it's not enough that the plaintiff's work be only tangentially or incidentally related to interstate commerce. If that was enough, the rideshare drivers in Grice and Capriol would be engaged in interstate commerce. They transported people and they did cross state lines. But it was such a de minimis portion in those cases, it wasn't deemed enough. Mushrooms can't be enough. There's virtually no transaction you could point to today that does not interstate commerce in some way. If such a de minimis amount was enough, the exemption would swallow the rule. Does the record give us any help in determining whether or not it's a de minimis amount? I know that they've only pointed to mushrooms, your honor, as possibly coming from out of state. That's only one product, but does it help? It could be a large amount of mushrooms given the nature of the business, right? I could ask the court to take judicial notice of the fact that nobody really likes mushroom pizzas, but no, there's no evidence as to the specific amount. Well, I like mushroom pizzas. Thank you, counsel. I just have one question. I'm sorry for taking you a little bit over time. I just want to be absolutely clear on what happens at the supply center with the products. I have the allegation that the supplies are reapportioned, weighed, packaged, stored, but also use these ingredients to create the products that the drivers deliver. What does that refer to? The product that's created on site, your honor, that's the pizza dough itself. That's made from scratch at the supply center. So that's not part of the interstate commerce? No, I'm not even sure that my friend Mr. Desai is contending that that's part of the interstate commerce. It's made from scratch at the supply center necessarily because it only has a seven-day shelf life. All right. Thank you. I just wanted to understand that. All right. Thank you very much, counsel, for this interesting argument. Thank you both. Very interesting argument. Thank you, your honors. Appreciate the time. Carmona versus Domino's Pizza will be submitted and this court will adjourn this session for today. Thank you. Thank you. This court for this session stands adjourned.
judges: WARDLAW, Parker, HURWITZ